FILED
CLERK, U.S. DISTRICT COURT
JUL - 9 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CLIFFORD KIRSTEIN,<br>KELEN MAGAEL BUCHAN,<br>MARK EL BERNACHAWY,<br>PETER IACINO, and<br>AGIYL KAMALDIN,<br>Defendants. | No. CR 13 CR 13 00469<br>I N D I C T M E N T<br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1349: Attempted Wire Fraud; 18 U.S.C. § 2(a): Aiding and Abetting] |

The Grand Jury charges:

COUNTS ONE THROUGH TWENTY-FIVE

[18 U.S.C. §§ 1343, 1349, 2(a)]

A. INTRODUCTORY ALLEGATIONS

1. At all times relevant to this Indictment:

a. Defendants CLIFFORD KIRSTEIN ("KIRSTEIN"), KELEN MAGAEL BUCHAN ("BUCHAN"), MARK EL BERNACHAWY ("EL BERNACHAWY"), PETER IACINO ("IACINO"), and AGIYL KAMALDIN ("KAMALDIN"), resided in or near Montreal, in Quebec, Canada.

RAK
REK

b. MoneyGram and Western Union were financial service companies that allowed a person to transfer money to another person virtually anywhere in the world. The sender would put the money into the MoneyGram or Western Union system and provide for the money to be picked up by, i.e., paid out to, an identified recipient. According to MoneyGram and Western Union rules, for transactions over specified threshold amounts, the recipient was required to provide photographic identification and other information in order to obtain the money from a MoneyGram or Western Union agent.

B. THE SCHEME TO DEFRAUD

2. Beginning on a date unknown to the Grand Jury, but at least as early as in or about December 2011, and continuing until at least in or about February 2012, in Los Angeles, Orange, Riverside, San Luis Obispo, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, aiding and abetting each other, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

3. The scheme to defraud operated, in substance, as follows:

a. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers, operating in Canada, would contact elderly victims throughout the United States by telephone. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would then falsely and fraudulently induce the

elderly victims to send money through the following fraudulent devices, among others:

i. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and the other co-schemers would falsely and fraudulently claim to be the victim's grandchild or other relative, and to be in trouble in a foreign country, such as Canada, Mexico, or the Dominican Republic. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and the other co-schemers would falsely and fraudulently represent to the victims that they needed the victim to send money in order to resolve the purported problem. For example, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers, falsely and fraudulently claiming to be the grandchild or other relative of the victim, would represent that he or she had been in a car accident and/or had been arrested and needed the money to be released on bail and/or to cover expenses arising from the purported accident.

ii. On other occasions, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would falsely and fraudulently claim to be an attorney or other agent in contact with the grandchild or other relative and acting to assist the grandchild or other relative.

b. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would direct the victims to send money via Western Union or MoneyGram, listing either the name of the grandchild or other relative, or the name of the supposed attorney or agent as the intended recipient. When victims sent funds by MoneyGram or Western Union, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would

arrange for those funds to be converted to cash for the benefit of defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers in the following ways, among others:

i. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would obtain from the victim the unique transaction number associated with the victim's Western Union or MoneyGram transaction.

ii. In some instances, using the transaction number or other information provided by the victim, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and the other co-schemers would fraudulently retrieve the funds from the MoneyGram or Western Union system by inputting the transaction number and other information provided by the victim, thereby falsely assuming the identity of the intended recipient, in contravention of the rules and policies of MoneyGram and Western Union.

iii. In other instances, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would provide the name of a supposed attorney or other agent to whom the victim was instructed to wire the money, and co-schemers would then retrieve the money from MoneyGram or Western Union using the name of the intended recipient that had been provided to the victim.

c. In some instances, after a victim sent money via MoneyGram or Western Union as instructed, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers would re-solicit that victim and induce him or her to send additional money, claiming that the additional money was needed by the grandchild or other relative to fully resolve the problem that the victim had initially been contacted about.

d. In no instance were defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, or any other co-schemer actually related to the victims or associated with the grandchildren or other relatives of the victims.

4. In furtherance of the above-described scheme to defraud, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers made and caused to be made to victims the following false and fraudulent representations and promises, among others:

a. That the caller was the victim's grandchild or other relative;

b. That the caller was an attorney or other agent acting for or at the behest of the victim's grandchild or other relative;

c. That the grandchild or other relative was in a country other than the United States;

d. That the grandchild or other relative was in legal and/or financial trouble; and

e. That the grandchild or other relative needed the victim to send money in order to resolve the legal and/or financial trouble.

5. In truth and in fact, as defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN then well knew, the representations and promises described above in paragraph four were materially false in the following respects, among others:

a. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers were not any victim's grandchild or other relative and had no affiliation with any victim's grandchild or other relative;

b. Defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers had no knowledge or reason to believe that the victim's grandchild or other relative was in a country other than the United States and/or was in legal and/or financial trouble; and

c. The money sent by the victims would not be used to resolve any problem faced by the grandchild or other relative, but rather would be used for the benefit of defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, and other co-schemers.

C. USE OF THE WIRES

6. On or about the dates set forth below, within the Central District of California and elsewhere, defendants KIRSTEIN, BUCHAN, EL BERNACHAWY, IACINO, and KAMALDIN, aiding and abetting each other, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| **COUNT** | **DATE** | **ITEM WIRED** |
|---|---|---|
| ONE | 12-1-11 | Telephone call between a co-schemer using the name "James" in Montreal, Quebec, Canada, and victim J.P., in Ridgecrest, California, USA |
| TWO | 12-2-11 | $5,000 wire transfer by Western Union, from victim J.P. in Ridgecrest, California, USA, received in Peru in the name of James K. Pringle |
| THREE | 12-8-11 | Telephone call between a co-schemer using the name "Michael" in Montreal, Quebec, Canada, and victim T.F. in Loma Linda, California, USA |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FOUR | 12-8-11 | $2,800 wire transfer by Western Union from victim T.F. in Loma Linda, California, USA, received in the Dominican Republic in the name of Jonathan Sanchez |
| FIVE | 12-8-11 | Telephone call between a co-schemer using the name "Jason" in Montreal, Quebec, Canada, and victim E.F. in Hawthorne, California, USA |
| SIX | 12-8-11 | $2,800 wire transfer by Western Union from victim E.F. in Hawthorne, California, USA, received in the Dominican Republic in the name of Edwin Padilla |
| SEVEN | 12-8-11 | $2,600 wire transfer by Western Union from victim E.F. in Hawthorne, California, USA, received in the Dominican Republic in the name of Edwin Padilla |
| EIGHT | 12-9-11 | $2,400 wire transfer by Western Union from victim E.F. in Hawthorne, California, USA received in the Dominican Republic in the name of Edwin Padilla |
| NINE | 12-9-11 | Telephone call between a co-schemer using the name "David" in Montreal, Quebec, Canada, and victim B.F. in North Hills, California, USA |
| TEN | 12-9-11 | $2,800 wire transfer by Western Union from victim B.F. in North Hills, California, USA, received in the Dominican Republic in the name of Edwin Padilla |
| ELEVEN | 12-29-11 | Telephone call between a co-schemer using the name "Robert" in Montreal, Quebec, Canada, and victim J.G. in Arleta, California, USA |
| TWELVE | 12-29-11 | $4,300 wire transfer by Western Union from victim J.G. in Arleta, California, USA, received in Bolivia in the name of Robert Thomas Girch |
| THIRTEEN | 1-4-12 | Telephone call between a co-schemer using the name "Steven" in Montreal, Quebec, Canada, and victim A.G. in Lake Elsinore, California, USA |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| FOURTEEN | 1-4-12 | $6,000 wire transfer by Western Union from victim A.G. in Lake Elsinore, California, USA, received in Bolivia in the name of Steven Girard |
| FIFTEEN | 1-4-12 | $3,300 wire transfer by Western Union from victim A.G. in Lake Elsinore, California, USA, received in Bolivia in the name of Steven Girard |
| SIXTEEN | 1-5-12 | $5,600 wire transfer by Western Union from victim A.G. in Lake Elsinore, California, USA, received in Bolivia in the name of Steven Girard |
| SEVENTEEN | 1-11-12 | Telephone call between a co-schemer using the name "Clayton" in Montreal, Quebec, Canada, and victim G.G. in La Crescenta, California, USA |
| EIGHTEEN | 1-11-12 | $4,145 wire transfer by Western Union from victim G.G. in La Crescenta, California, USA, received in Bolivia in the name of Clayton Robert Geer |
| NINETEEN | 1-12-12 | $2,718.37 wire transfer by Western Union from victim G.G. in La Crescenta, California, USA, received in Bolivia in the name of Jhanjha Mitra |
| TWENTY | 2-8-12 | Telephone call between a co-schemer using the name "Paul" in Montreal, Quebec, Canada, and victim J.R. in Hemet, California, USA |
| TWENTY-ONE | 2-8-12 | $2,400 wire transfer by Western Union from victim J.R. in Hemet, California, USA, received in Spain in the name of Paul Lopez |
| TWENTY-TWO | 2-9-12 | $2,342 wire transfer by Western Union from victim J.R. in Hemet, California, USA, received in Spain in the name of Paul Lopez |
| TWENTY-THREE | 2-9-12 | $2,295 wire transfer by Western Union from victim J.R. in Hemet, California, USA, received in Spain in the name of Thomas Bradshaw |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TWENTY-FOUR | 2-22-12 | Telephone call between a co-schemer using the name "Brendon" in Montreal, Quebec, Canada, and victim R.D. in Camarillo, California, USA |
| TWENTY-FIVE | 2-22-12 | Telephone call between a co-schemer using the name "Brendon" in Montreal, Quebec, Canada, and victim G.D. in Camarillo, California, USA |

A TRUE BILL

/s/

Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

RANEE KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ELLYN MARCUS LINDSAY
MONICA TAIT
Assistant United States Attorneys
Major Frauds Section